IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LE RACHA SIMON,<br>    PLAINTIFF<br><br>VS.<br><br>BOARD OF REGENTS OF THE<br>UNIVERSITY OF NEBRASKA,<br>MATT HALE, AND MARTHA<br>GARCIA-MURILLO<br>    DEFENDANTS. | CASE NO.<br><br><br>COMPLAINT<br>(JURY DEMAND) |

COMES NOW, Plaintiff, Le Racha Simon, by and through her attorney, John D. Cartier, files their Complaint, complaining of the acts of the Board of Regents of the University of Nebraska ("BRUN"), Matt Hale, and Martha Garcia-Murillo (collectively "Defendants"). Plaintiff requests a trial by jury, and for her causes of action against the Defendants, state and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the acts occurred in the District of Nebraska.

4. Plaintiff has met the administrative requirements of this action in that she filed a charge of discrimination with the Nebraska Equal Opportunity Commission and the Equal Employment Opportunity Commission and received a Notice of Right to Sue from both entities and timely filed suit with this Court

### PARTIES

5. Plaintiff, Le Racha Simon, is a Black woman and, at all times relevant hereto, was a resident of Douglas County, Nebraska and an 'employee' within the meaning of the Nebraska Fair Employment Practice Act (NFEPA), Title VII of the Civil Rights Act of 1964, and Neb. Rev. Stat. § 48-1104.

6. Defendant, Board of Regents of the University of Nebraska ("BRUN") is a body corporate that exists and operates by virtue of the constitution and statutes of

2

Nebraska and is a recipient of State and Federal funds. Defendant is an "employer" within the meaning of Neb. Rev. Stat. § 48-1102(2).

7. University of Nebraska at Omaha ("UNO") is a public institution of higher education governed and operated by the Defendant Board of Regents of the University of Nebraska with its principal place of business in Omaha, Douglas County, Nebraska.

8. At all relevant times, Dean Martha Garcia-Murillo, Professor Matt Hale, and any other individuals referenced in this Complaint were employees and agents of UNO and BRUN, acting within the course and scope of their employment. Their conduct, as described herein, is attributable to Defendant under the doctrines of respondeat superior and agency.

## FACTUAL ALLEGATIONS

9. Plaintiff was employed as a Marketing and Communication Specialist with Defendant from July 18, 2022, and had held a previous position at the University in housing.

10. Plaintiff identifies as Black and has a non-traditional first name.

11. Plaintiff was qualified for their position and performed their job duties satisfactorily, as evinced by evaluations where she received scores of 4's and 5's on a 5-point scale where 1 represented Does Not Meet Expectations and 5 represented Outstanding.

12. On or around the Summer of 2023, Plaintiff was subjected to ongoing behavior that was microaggressive and disrespectful, as Martha Garcia-Murillo ("Garcia-Murillo") Dean of the College of Information Science and Technology ("IST") persistently and deliberately addressed Plaintiff by the wrong name ("Alexis"), despite being corrected numerous times by Plaintiff.

13. Notably, Garcia-Murillo supervised only two people at the time and consistently misnamed the Plaintiff and another Black employee, a clear indication of racial animus.

14. Plaintiff alleges this microaggressive and disrespectful behavior dramatically changed the dynamic of her working relationship with Garcia-Murillo.

15. Additionally, Matt Hale ("Hale"), Associate Professor of Cybersecurity, consistently exhibited rude, aggressive, and unprofessional behavior toward Plaintiff. He accused Plaintiff of attacking him and treating him unfairly when

3

she was simply enforcing university policy. Hale berated Plaintiff during meetings for holding him accountable to institutional rules.

16. This incident is well-documented in their email correspondence and reflects an ongoing pattern of hostility and disregard for Plaintiff's professional boundaries.

17. Plaintiff experienced contemptuous treatment from Hale early on in her employment and the hostility intensified as the racially microaggressive behavior and harassment from Garcia-Murillo escalated.

18. Plaintiff asserts upon information and belief, Hale had previously been warned about his conduct, yet no corrective action was taken by the Defendant.

19. Plaintiff escalated all of her concerns internally (in accordance with Defendant's reporting policy, to the University's Human Resources Department via Kristina Hoffman, and the Title IX office via Sarah Weil, and a senior vice chancellor, but no effective action was ever taken.

20. Plaintiff followed up on her complaints and was told by Kristina Hoffman and Sarah Weil that "confidentiality" was the reason Plaintiff had not been notified of corrective action taken, when in reality nothing was being done to address her issues.

21. Shortly after escalating concerns, Plaintiff was retaliated against by Garcia-Murillo.

22. Garcia-Murillo drastically lowered Plaintiff's 2023 performance ratings (from the 4s and 5s Plaintiff had received in previous years to 1s and 2s) despite Plaintiff performing her assigned duties in exactly the same manner.

23. When Plaintiff requested to preview her 2023 evaluation prior to a meeting about her performance, Garcia-Murillo denied her requests, claiming it was "not university policy", which was a departure from prior practice.

24. Prior to escalating her complaints of harassment, Plaintiff had always been allowed to review her evaluations before performance meetings.

25. Plaintiff was deliberately denied the opportunity to review her evaluation prior to the performance meeting (an abrupt and unjustified break from prior practice) and although she formally requested transparency and submitted a rebuttal for her lower scores, Garcia-Murillo made only minimal score changes, suggesting a predetermined intent to undermine Plaintiff's performance record.

26. In or around September 2023, Plaintiff began taking intermittent leave under the Family and Medical Leave Act (FMLA) due to severe work-related stress. Her symptoms included chronic migraines, heightened anxiety requiring medication adjustments, and stress-induced medical conditions such as elevated blood sugar and cholesterol levels, as well as a cyst that ultimately required surgical removal.

27. In or around December 2023 and January 2024, while Plaintiff was on approved FMLA leave, Garcia-Murillo made multiple requests for her to perform work-related tasks. In response, Plaintiff emailed Garcia-Murillo to clarify whether she was being asked to work while on protected leave. Garcia-Murillo replied, *"you might have to respond to emails."*

28. Upon inquiry, Human Resources and the University's Benefits Office confirmed that Garcia-Murillo requests were inappropriate and inconsistent with FMLA regulations. These actions constitute unlawful interference with Plaintiff's right to take protected leave under the FMLA.

29. Moreover, the University's failure to address the interference (and subsequent adverse treatment of Plaintiff) further supports a claim of retaliation for exercising her statutory rights.

30. In February 2024, Garcia-Murillo falsely claimed that Plaintiff's FMLA leave had not yet been approved, directly contradicting information previously provided to Plaintiff by the University's Benefits Office. This misrepresentation further undermined Plaintiff's ability to exercise her protected rights under the FMLA and contributed to a pattern of interference and retaliation.

31. In a conversation with Sarah Weil on or about April 4, 2024, Plaintiff disclosed that Garcia-Murillo had intentionally called her by the wrong name for over two years, both publicly and privately, despite repeated corrections.

32. In that same meeting, Plaintiff further reported that Garcia-Murillo had yelled at her during meetings and, in one instance, aggressively stood over her while demanding she retrieve an email that Garcia-Murillo had previously received from her. In order to de-escalate the interaction, Plaintiff was forced to leave Garcia-Murillo's office entirely.

33. In that same meeting, Plaintiff informed Sarah that she no longer felt safe meeting with Garcia-Murillo alone, citing concerns about retaliation, including but not limited to yelling, stomping, gaslighting her and undermining her work assignments.

5

34. Plaintiff specifically requested that a neutral party or witness be present in future meetings with Garcia-Murillo, due to her ongoing fear of retaliation and the escalating pattern of hostile behavior.

35. Additionally, Plaintiff shared with Sarah Weil that as of April 2024, her mental health had severely and steadily declined due to the hostile and abusive work environment under Garcia-Murillo's supervision.

36. In or around April 2024, Plaintiff was formally diagnosed with and started treatment for anxiety, panic attacks, a diminished interest in activities, depression and insomnia by a licensed mental health practitioner.

37. Plaintiff incurred medical expenses for ongoing treatment, counseling, medication, and related care as a direct result of the hostile and retaliatory environment created by Defendants.

38. Between May and June 2024, Plaintiff began to experience escalating pressure that suggested the University was attempting to force her out of her position, despite having no documented performance issues warranting a Performance Improvement Plan or termination.

39. Plaintiff was not formally disciplined at any point during her employment. However, due to the deteriorating conditions of her working environment, she continued to take intermittent FMLA leave, further supporting an inference that the Defendant's conduct was motivated, at least in part, by her exercise of protected rights.

40. On September 15, 2024, due to the hostile work environment, Plaintiff submitted her resignation; however, the University inaccurately recorded her termination date as September 7, 2024.

41. On or about September 27, 2024, Plaintiff contacted the University's payroll office to request a pay stub and to correct the discrepancy. During that conversation, she was informed that her termination had been processed as occurring a full week prior to her actual resignation.

42. Plaintiff spoke with the head of payroll and asked that the record be verified with relevant personnel, including an individual named "Jackie," to confirm that her resignation was effective September 15, 2024. The payroll representative acknowledged the concern and stated they would investigate and follow up via email.

43. As of August 2025, Plaintiff has not received confirmation that the record was corrected. This unexplained alteration of her separation date raises further concern regarding the University's treatment of Plaintiff in connection with her protected activity and departure.

44. On September 13, 2024, Plaintiff contacted the Nebraska Equal Opportunity Commission (NEOC) to initiate a formal complaint alleging retaliation, discrimination, and harassment by the University and its agents.

45. Consequently there was an ongoing pattern of harassment and retaliation based on race.

46. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights.

47. Importantly, Plaintiff enjoyed her role at the University and she did it well; but for these egregious acts of discrimination, retaliation, and harassment, she would still be employed there.

48. Defendant's actions caused Plaintiff to suffer lost wages, emotional distress, humiliation, and other damages.

49. As a result of this conduct, Plaintiff lost her employment, income, mental and physical health stability, and career advancement opportunities, harms for which she now seeks redress.

**CAUSES OF ACTION**

**Count I – Race Discrimination in Violation of the Nebraska Fair Employment Practice Act (NFEPA)**

**(Against Defendant Board of Regents of the University of Nebraska and Martha Garcia-Murillo in her individual capacity)**

50. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

51. Under the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1104, it is unlawful for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of race.

52. Plaintiff, a Black woman, was subjected to disparate treatment based on her race by Defendant Garcia-Murillo, including—but not limited to—repeatedly calling her by the name of the only other Black woman in the department over a

7

period of two years, despite Plaintiff's numerous corrections. None of Plaintiff's white colleagues were subjected to similar treatment.

53. Garcia-Murillo further subjected Plaintiff to adverse employment actions, including unjustified performance downgrades, micromanagement, exclusion from decision-making, and public belittlement. These acts were motivated by racial bias and constituted unlawful discrimination under NFEPA.

54. This conduct, combined with adverse actions including unjustified downgrading of performance evaluations, denial of procedural rights, public belittlement, and unfounded scrutiny, constituted disparate treatment based on race.

55. The Board of Regents was aware or should have been aware of this unlawful conduct through internal reports to Human Resources and other departments, but failed to take prompt or effective remedial action.

56. As a direct and proximate result of Defendants' conduct, Plaintiff suffered lost income, reputational harm, and emotional distress.

**Count II – Retaliation in Violation of NFEPA**

**(Against Defendant Board of Regents of the University of Nebraska and Martha Garcia-Murillo in her individual capacity)**

57. Plaintiff realleges and incorporates by reference the preceding paragraphs.

58. Under Neb. Rev. Stat. § 48-1114, it is unlawful for any person to retaliate against an employee for opposing practices forbidden under the Act or for participating in any investigation or proceeding.

59. After Plaintiff reported racial discrimination and harassment to Human Resources and other internal offices, Garcia-Murillo retaliated against her by:
    - Downgrading her performance evaluation from 4s and 5s to 1s and 2s without justification;
    - Refusing to allow Plaintiff to preview her performance evaluation prior to meetings, in violation of prior practice;
    - Micromanaging Plaintiff's work and making disparaging comments about her to colleagues;
    - Pressuring her to perform work while on approved FMLA leave;
    - Escalating public hostility and aggressive behavior during meetings.

60. These actions occurred within weeks of Plaintiff's protected complaints/leave.

61. These actions were materially adverse and designed to chill Plaintiff's exercise of her civil rights under NFEPA.

8

62. As a direct and proximate result of the retaliatory conduct by Garcia-Murillo and ratified by the Board, Plaintiff has suffered economic and emotional damages.

**Count III – Hostile Work Environment on the Basis of Race in Violation of NFEPA**

**(Against Defendants Board of Regents of the University of Nebraska, Martha Garcia-Murillo in her individual capacity, and Matt Hale in his individual capacity)**

63. Plaintiff realleges and incorporates by reference the preceding paragraphs.

64. A hostile work environment exists under NFEPA when an employee is subjected to severe or pervasive conduct that alters the conditions of employment and is based on a protected characteristic such as race.

65. Garcia-Murillo subjected Plaintiff to persistent misnaming, racial microaggressions, hostility, and retaliatory conduct. Matt Hale participated in this environment by bullying Plaintiff, using aggressive communication, and refusing to intervene despite his knowledge of the discriminatory dynamics.

66. Plaintiff reported the conduct through the appropriate internal channels, but the Board failed to remedy the situation.

67. Despite internal complaints to Human Resources, the Title IX Office, and upper administration, Defendants failed to investigate or correct the conduct, and allowed it to continue and escalate.

68. As a direct and proximate result, Plaintiff suffered emotional distress, damage to her professional reputation, and constructive discharge.

**Count IV – Retaliation in Violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(2)**

**(Against Martha Garcia-Murillo in her individual capacity)**

69. Plaintiff realleges and incorporates by reference the preceding paragraphs.

70. Under 29 U.S.C. § 2615(a)(2), it is unlawful for an employer to retaliate against an employee for exercising rights under the Family and Medical Leave Act.

71. After Plaintiff began taking FMLA leave for work-related stress and related medical issues in September 2023, Garcia-Murillo retaliated against her by intensifying workplace pressure, undermining her work performance, and insisting that she complete job duties during leave.

9

72. These acts were taken in close temporal proximity to Plaintiff's use of protected leave and constitute unlawful retaliation under the FMLA.

73. Garcia-Murillo exercised control over Plaintiff's leave usage, job duties, and day-to-day assignments and thus was an "employer" who acted, directly or indirectly, in the interest of the Board with respect to Plaintiff's employment within the meaning of 29 U.S.C. § 2611(4)(A)(ii)(I).

74. As a result, Plaintiff suffered additional stress, anxiety, and economic harm, ultimately contributing to her forced resignation.

### Count V – Interference with FMLA Rights, 29 U.S.C. § 2615(a)(1)

### (Against Martha Garcia-Murillo in her individual capacity)

75. Plaintiff realleges and incorporates by reference the preceding paragraphs.

76. The FMLA prohibits employers from interfering with, restraining, or denying the exercise of any right provided under the Act.

77. While Plaintiff was on approved leave, Garcia-Murillo instructed her to perform job functions and respond to work emails, and falsely claimed that her leave had not yet been approved—despite confirmation from the University's own Benefits Office.

78. This conduct interfered with Plaintiff's protected rights under the FMLA and created uncertainty and fear around the use of medical leave, thereby undermining the purpose of the statute.

79. Garcia-Murillo exercised control over Plaintiff's FMLA rights, leave usage, and work assignments and thus was an "employer" within the meaning of 29 U.S.C. § 2611(4)(A)(ii)(I).

80. As a result, Plaintiff experienced emotional distress and was deterred from fully utilizing protected leave.

### Count VI – Constructive Discharge (Adverse Employment Action) in Violation of NFEPA and Title VII

### (Against Defendant Board of Regents of the University of Nebraska)

81. Plaintiff realleges and incorporates by reference the preceding paragraphs.

82. Constructive discharge occurs when an employer renders the working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign.

10

83. Throughout her employment, Plaintiff was subjected to ongoing racial harassment, retaliation, and FMLA interference by Garcia-Murillo and others acting under the authority of the Board. This included persistent misnaming, hostile public confrontations, retaliatory performance downgrades, denial of standard procedural rights, and inappropriate pressure to work while on protected medical leave.

84. Despite multiple internal reports, the Board failed to take action to correct the unlawful conduct.

85. By August and September 2024, it was clear that Plaintiff was being isolated and pushed toward separation from the University. Faced with these conditions and the University's continued failure to intervene, Plaintiff submitted her resignation on September 15, 2024.

86. The Board's conduct was a direct and proximate cause of Plaintiff's constructive termination, resulting in lost wages, benefits, and future employment opportunities.

87. Plaintiff's resignation was not voluntary, but the direct and foreseeable result of unlawful and intolerable workplace conditions. As such, Defendants are liable for constructive discharge and the resulting damages.

88. As a direct result of Defendants' unlawful conduct, Plaintiff was forced to resign her position and has suffered lost income, lost benefits, emotional distress, and diminished career opportunities. She now seeks full relief as permitted under law.

**Count VII – Failure to Prevent and Remedy Discrimination and Retaliation**

**(Under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and the Nebraska Fair Employment Practice Act)**

**(Against Defendant Board of Regents of the University of Nebraska)**

89. Plaintiff realleges and incorporates by reference the preceding paragraphs.

90. At all relevant times, Defendant Board of Regents of the University of Nebraska ("Board") had a duty under the Nebraska Fair Employment Practice Act (NFEPA) and Title VII of the Civil Rights Act of 1964 to take reasonable steps to prevent and promptly correct unlawful discrimination, retaliation, and harassment in the workplace.

91. Despite Plaintiff's repeated complaints to Human Resources (Kristina Hoffman), the Title IX Office (Sarah Weil), and a senior vice chancellor, the Board failed to

11

take prompt, effective, or meaningful action in response. Plaintiff was repeatedly told that no updates could be provided due to "confidentiality," even as the unlawful behavior escalated and her working conditions deteriorated. Upon information and belief, no adequate investigation or disciplinary action was taken against the individual actors responsible.

92. The Board's failure to act allowed the unlawful conduct to continue and worsen. By failing to discipline Martha Garcia-Murillo or intervene after Plaintiff's well-documented complaints, the Board demonstrated deliberate indifference to the hostile and retaliatory work environment. Further, the Board permitted the continuation of racially discriminatory practices and adverse employment actions against Plaintiff, despite having knowledge of the conduct and the authority to prevent it.

93. Additionally, the Board failed to implement or enforce policies that would ensure accountability, supervisor training, transparent complaint resolution procedures, or other safeguards necessary to prevent the discrimination and retaliation suffered by Plaintiff.

94. As a direct and proximate result of the Board's failure to prevent and remedy this unlawful conduct, Plaintiff was subjected to ongoing harassment, retaliation, interference with protected medical leave, and ultimately, constructive discharge. She suffered lost wages, lost benefits, reputational harm, emotional distress, and mental anguish.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Le Racha Simon respectfully requests that the Court enter judgment in her favor and against Defendants the Board of Regents of the University of Nebraska, Martha Garcia-Murillo, and Matt Hale, and award the following relief:

a. Compensatory Damages for back pay, front pay, lost benefits, and other economic losses incurred as a result of Defendants' unlawful conduct;

b. Medical Expenses for costs associated with diagnosis, treatment, and management of stress-induced physical and mental health conditions caused by Defendants' unlawful conduct

c. Non-Economic Damages for emotional distress, mental anguish, reputational harm, and other non-economic injuries suffered by Plaintiff;

d. Liquidated Damages as permitted under the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(1)(A)(iii), for willful violations of Plaintiff's protected leave rights;

e.  Attorney's Fees and Costs for reasonable attorney's fees, expenses, and costs pursuant to NFEPA, 42 U.S.C. § 2000e-5(k), and 29 U.S.C. § 2617(a)(3);

f.  Pre- and Post-Judgment Interest as allowed by law; and

g.  Such Other and Further Relief as the Court deems just and proper under the circumstances.

        Le Racha Simon, Plaintiff
*Respectfully submitted,*

BY:   */s/ John D. Cartier*

        John D. Cartier #26307
        Cartier Law, LLC
        PO Box 5241
        Lincoln, Nebraska 68505
        (954) 319-9832
        johncartierlaw@gmail.com